A. H. CROSS et al., Appellants, v. SUSIE HUFFMAN et al.

Division One, December 20, 1919.

1. **QUIETING TITLE: Suit in Equity: Finding of Facts: Appellate Practice.** If the petition to ascertain and determine the title to land states facts which show that defendants hold the title in trust for plaintiffs, that the alleged deed under which defendants' claim constitutes a cloud upon plaintiffs' title, and otherwise presents equitable issues and asks for equitable relief, the suit should be regarded as one in equity, and any finding of facts by the trial court is not binding upon the appellate court.

2. **RESULTING TRUST: Deed by Entirety: Purchased With Wife's Money: Coparceners.** *Held,* by GRAVES and GOODE, JJ., that a deed made to husband and wife, as joint tenants, or tenants by the entirety, conveying land fully paid for with the wife's money or property, and of which she had previously entered into possession, invests no estate in the husband, but invests the entire estate in the wife, even though she directs that the deed be made to her and him jointly.

3. ———: ———: **By Wife's Direction: Estoppel.** *Held,* by GRAVES and GOODE, JJ., that where the wife has purchased and paid for property and is in possession of it, having become thereby the equitable owner, the vendor's deed conveying the legal title to her and her husband vests him with no more title and her with no less than would a friendly partition of her ancestor's land setting off to her as cotenant her share therein by a deed purporting to convey the same to her and him. In both cases, the property is hers, and she conveys nothing to him, and consequently, even though the deed is so made by her direction, she has done nothing to estop herself from claiming her own.

4. ———: ———: **Limitations.** To constitute title by limitations the possession must be exclusive. Where land was purchased with the wife's money only, and the deed was made to her and her husband

jointly, at a time when she was already in possession, subsequent occupation of the same by them during her life for thirteen years, and by him after her death for seven years and during the remainder of his life, did not bar a suit brought soon after his death, by her children against his, to have the deed removed as a cloud upon the legal title. He was not in exclusive possession during the life of the wife. Besides, under the Married Woman's Act of 1889 the right to possession of the wife's real estate is in her, and not in her husband, and though they occupied the premises jointly she was in law in exclusive possession, and his adverse possession did not begin to run until her death, and to bar recovery by her children must have been continuous for ten years before their suit was brought.

5. **RESULTING TRUST: Deed by Entirety: |Wife's Lands: Limitations.** A deed to a husband and wife, his name being inserted without the wife's knowledge or consent, conveying land bought and paid for by her money or property, is as to him an absolute nullity, just as if his name had nowhere been inserted therein, and can be annulled as a cloud upon her title. But the result would be the same if it were ruled that he took the legal title with her and held it as a resulting trust for her, as would have been the case had the deed named him alone as grantee. In either case, if she was in possession during their joint lives, whether she permitted him to occupy the premises with her or not, his adverse possession did not begin to run until her death. [Distinguishing Reed v. Painter, 145 Mo. 341.]

Appeal from Jasper Circuit Court.—*Hon. R. A. Pearson,* Judge.

REVERSED (*with directions*).

*Owen & Davis* for appellants.

(1) Mrs. Middaugh was, at the time of the execution and delivery of the deed to her and her husband, George Middaugh, the equitable owner of the real estate therein conveyed, and said deed did not create in them an estate by the entirety. 13 R. C. L. 1110; Sprinkle v. Spainhour, 25 L. R. A. (N. S.) 167; Moore v. Moore, 12 B. Mon. (Ky.) 644; Harrison v. McReynolds, 183 Mo. 533; Snyder v. Elliott, 171 Mo. 362. (2) The evidence is conclusive that Mr. Middaugh furnished no part of the consideration for the purchase of the real

estate in question, and the burden was on defendants
to prove by affirmative evidence that Mrs. Middaugh
intended a gift or advancement to her husband, and the
fairness thereof. Denny v. Denny, 23 N. E. 519; King
v. King, 57 N. E. 275; Parrett v. Palmer, 35 N. E. 713;
13 Ency. Ev. 131; 39 Cyc. 154; Ilgenfritz v. Ilgenfritz,
116 Mo. 436; Fogle v. Pindell, 248 Mo. 74; Lins v. Len-
hardt, 127 Mo. 287; Gay v. Gillilan, 92 Mo. 264; Hovorka
v. Havlik, 110 Am. St. 387.   The consent of Mrs. Mid-
daugh to the making of the deed to herself and husband,
and the fairness of the transaction, cannot be proved by
loose declarations which she may have made.   2 Ency.
Evidence,   224;   Ringo   v.   Richardson,   53 Mo. 394;
Ferguson v. Robinson, 258 Mo. 1. c. 137;   Pitts v.
Weakley, 155 Mo. 138;   Smith   v.   Smith,   201   Mo.
547. Furthermore, her   consent   would   have   to   be
in writing.   Powell v. Powell, 267 Mo. 125.   (3)   The
land in question was used and occupied by Mr. and Mrs.
Middaugh as a home, and there could not, in the very
nature of the situation, be an adverse possession on the
part of the husband, and hence the Statute of Limita-
tions could not and did not run against her.   21 Cyc.
1208, 1209;   1 R. C. L. 755;   Carpenter v. Booker, 130
Ga. 546, 127 Am. St. 241;   Davis v. Cummins, 195 S.
W. 756;   Poynton v. Miller, 144 Mo. 688, 79 Am. Dec.
73, 7 L. R. A. 568;   Gafford v. Strauss, 18 Am. St. 111;
Wells Am. Mort. Co., 109 Ala. 430;   Brader v. Dyer, 68
Am.   St.   332;   Hovorka v. Havlik, 110 Am. St. 387;
Stiff v. Cobb, 126 Ala. 381, 85 Am. St. 38;   Hinton v.
Farmer, 121 Am. St. (Sea.) 63.   (4)   Plaintiffs' cause
of action was not barred under Sec. 1883, R. S. 1909,
unless there was an adverse possession by Middaugh
prior to the death of Mrs. Middaugh, which together
with the time intervening between her death and the
commencement of this suit would make ten years.   De
Hart v. Edmonds, 200 Mo. 246; Rutter v. Carothers, 223
Mo. 631.

*J. H. & W. E. Bailey* for respondents.

The trial court held that the rights of George Mid-
daugh under the Richardson deed constituted a result-

ing trust in favor of Elizabeth Middaugh. The Statute of Limitations commenced to run against her right to enforce such trust February 12, 1896. This suit was not brought until more than seven years after the death of Elizabeth Middaugh and is therefore barred by the three-year Statute of Limitation, Sec. 1883, R. S. 1909. Reed v. Painter, 145 Mo. 341; McKee v. Downing, 224 Mo. 132; Robinson v. Allison, 192 Mo. 367. The Statute of Limitations runs against implied or constructive trusts. Hudson v. Cahoon, 193 Mo. 562; Landis v. Saxton, 105 Mo. 489; Reed v. Painter, supra. The cause of action having accrued to Elizabeth Middaugh in 1896, this suit, instituted in 1916, is clearly barred under the rule that in any event ten years must elapse. Rutter v. Carothers, 223 Mo. 631; Gray v. Yates, 67 Mo. 601; Smelser, et al. v. Meiel, 271 Mo. 178.

SMALL, C.—Appeal from the Jasper County Circuit Court. Elizabeth Cross was a widow with two children. Said children are plaintiffs in this cause. They lived in Jasper County, and on the 6th day of October, 1894, at a trustee's sale, under a deed of trust, which had been made to secure a note for money loaned by her to one DeCocq and wife, she purchased the east half of Lot Five of the northeast quarter of Section Six, Township nine, Range twenty-two, in said county, for which she received the trustee's deed, and thus became the owner. On the 10th day of January, 1895, Elizabeth Cross entered into a bond for deed, by which she bound herself to George W. Richardson to convey her said land to him in exchange for certain lands described in said bond owned by said Richardson, and which is the property in controversy in this case. Said bond further recited that "until she made a warranty deed of her said property to Richardson," he might "*occupy and improve her land for his own use.*" It seems to have been part of the trade, although not mentioned in the bond, that Elizabeth Cross should also, until Richardson conveyed his property to her, move onto and take possession of the property of said Richardson.

Accordingly, we find from the evidence that on the 12th day of January, 1895, Elizabeth Cross moved onto the Richardson place. She had lots of young stock and some horses, cows and hogs, which she took with her. She probably had some money, how much does not appear. She was a woman of advanced years and uneducated. Her grandson, who was a good-sized boy, the son of the plaintiff, Mrs. Alyea, lived with his grandmother awhile, and helped milk the cows and do other work for her. Shortly after moving onto the Richardson place, she met George Middaugh. He was a widower, also advanced in years, with grown-up children. His children, by his first wife, are the defendants in this case. One of his daughters lived near Elizabeth Cross's new home, and it was at her home that she first met George Middaugh. The result was that George Middaugh and Elizabeth Cross were married in May, 1895. His property consisted of a black horse, that died soon after the marriage. On September 12, 1896, George W. Richardson, who, it seems, had gone to Colorado for his health, had returned to Carthage, and was ready to close up the contract for exchange of properties entered into in January of the preceding year. But Elizabeth Middaugh was sick, and unable to go herself, and sent her husband to Carthage to comsummate the contract and get her deed. Instead, however, of having the deed made to her alone, as the contract with Richardson called for, he had the deed made to himself and his wife, as joint tenants, or as tenants by the entirety. Up to this point, there is no dispute of consequence in the testimony.

The plaintiff, Mrs. Alyea, testified, among other things, and she is corroborated by Nora Shire, an apparently disinterested witness, that when her mother found out that the deed had been made to her husband and herself, she strenuously objected, and told him that the place belonged to her children, that their father had made the money with which she had purchased it, and that she was going to Carthage to have it changed and put in her name, but she was weak and sick, and death

overtook her before the change was made. Plaintiff, Mrs. Alyea, and several other witnesses for plaintiffs, also testified, that George Middaugh frequently promised his wife that he would go to Carthage with her, when she was able, and change the deed to her name. On the other hand, the defendants, Susie Huffman and Lydia Scott, testified to several conversations with their step-mother, after the deed to her husband and herself had been made, in which she stated that she was satisfied to have the deed stand as it was, and that she wanted her husband to have the property in case she died first. J. C. Ross also testified to such conversation. But the plaintiff, Mrs. Alyea, testified that she had a lawsuit with Ross, about a line fence. The rental value of the property was ten dollars per month.

Elizabeth Middaugh and her husband continued to reside on the property, as husband and wife, until her death, on July 22, 1909, and thereafter the said George Middaugh continued to live thereon until his death in September, 1916, and thereafter the defendants were in possession until suit was filed December 27, 1916.

The petition is in two counts. The first count being a count to quiet title, sets up substantially the facts as claimed by the plaintiffs above narrated, and prays the court to determine the title, and to declare the defendants hold the title in trust for the plaintiffs, and by its decree divest said defendants of all title and invest it in the plaintiffs, to award plaintiffs possession, and that the court take an account of the rents and profits, and that plaintiffs have judgment against the defandants therefor, and for all other relief that plaintiffs may be entitled to under the pleadings and evidence. The second count in the petition is an ordinary count in ejectment.

The answer admits the ownership of Elizabeth Cross of the land that she agreed to convey to George W. Richardson in exchange for the land in controversy. It alleges "that on the 10th day of January, 1895, she, the said Elizabeth Cross, entered into a contract with

one George W. Richardson, to trade the land above described for the land described in plaintiffs' petition; that after the execution of said contract, the said George Middaugh and Elizabeth Cross intermarried on the — day of ——, 1895." The answer further alleges that said deed of September 12, 1896, from said Richardson and wife to Elizabeth Middaugh and George Middaugh, was made to them as husband and wife with the intent to create an estate by the entirety, at the request of and by the direction of said Elizabeth Middaugh. That since the death of said Elizabeth Middaugh, George Middaugh under and by virtue of said deed held the possession of said land, and claimed all of the right, title and interest therein. "Defendants further answering say that the cause of action in the petition mentioned did not accrue within three years before the commencement of this suit." The answer to the second count of the petition was a general denial.

The reply was a general denial.

The court made a finding of facts at the request of plaintiffs, which included most of the facts we have recited, and stated that the deed from Richardson and wife "*was caused by said George Middaugh* to be made to said George and Elizabeth Middaugh, as husband and wife, on the 12th day of September, 1896, and on the following day said George Middaugh delivered said deed to said Elizabeth Middaugh, who knew and was fully informed and advised of the manner and form of said deed, and who thereafter caused the same to be recorded in the office of the recorder of deeds of Jasper County, Missouri; that said George Middaugh never, at any time, disputed or denied the right and interest of said Elizabeth Middaugh, by reason of the said property having been purchased with her means and property, and that such right and interest as said George Middaugh had or held under and by virtue of said deed to himself and wife, were a resulting and constructive trust for the said Elizabeth Middaugh; that said George Middaugh lived in said county from

and after said conveyance until the time of his death in 1916, and that said Elizabeth Middaugh during that time brought no action to have such trust established and declared, and that these plaintiffs, the heirs of said Elizabeth Middaugh, have brought no action for said purpose, and did not file this action until the 27th day of December, 1916, or more than seven years after the death of said Elizabeth Middaugh, and they are precluded under the Statute of Limitations from maintaining this action." We have been unable to find any evidence in the record that George Middaugh delivered the deed to Elizabeth Middaugh the day following September 12, 1896, the date of the deed, or that she caused it to be recorded, or knew the contents thereof before it was recorded, as stated in said finding. And we find no evidence that she directed or authorized said deed to be made to herself and husband in the first instance, as stated in the answer, nor does the lower court so find.

The judgment of the lower court being for defendants, the plaintiffs appealed.

I. The facts set up in the petition present equitable issues, and there being a prayer for equitable relief, the suit may be regarded as an equitable suit to quiet title, to divest title from defendants and remove **Practice.** any claim they assert, as the heirs of George Middaugh under the alleged deed to George Middaugh and Elizabeth Middaugh, as a cloud upon plaintiffs' title. Equitable issues being present, we must consider the testimony in the case, as the findings of facts by the lower court are not binding upon us. [Koehler v. Rowland, 275 Mo. 573, and cases cited.]

II. We rule that the deed in question conveyed no title to George Middaugh. Elizabeth Middaugh was in possession of the land, and was the equitable owner of it, when she married George Middaugh. She had then obligated herself to George W. Richardson to make him

a deed to the property she formerly owned in exchange for the land in suit, and in part performance of the contract had given him possession of her land, with the right to occupy and improve *the same for his own use and benefit* until she delivered him a warranty deed thereto. She had also moved onto and taken possession of the land in controversy owned by said Richardson, in part performance of his obligation to convey to her. Since the Married Woman's Act of 1889, a married woman may employ her husband, as agent, to transact business for her. When George Middaugh delivered her deed to George W. Richardson to consummate the contract of exchange, she thereby fully paid for the land Richardson was to convey to her, and she was in possession thereof. Her equitable title to the land was then complete. The fact that her husband and agent fraudulently, and without her consent, as we must hold, caused his name to be inserted in her deed jointly with her name as grantee, conveyed him no title as against her.

*Deed by Entirety: Resulting Trust: Co-Parceners: Estoppel.*

In this State it is the settled law, that if the wife is a tenant in common, and there is a voluntary partition of the common estate, a deed made to the husband and wife, as joint tenants, or tenants by the entirety, conveys no estate to the husband and invests the entire estate in the wife, even though the wife directed the deed to be made to her husband and herself jointly. This, for the reason that the wife really owned the title before the deed was made, and the only effect and purpose of the deed was to sever the possession of the property between the coparceners. In such case, the land is the wife's by virtue of being a coparcener and not by virtue of the deed. [Powell v. Powell, 267 Mo. 117; Starr v. Bartz, 219 Mo. 47; Whitsett v. Womack, 159 Mo. 14; Palmer v. Alexander, 162 Mo. 127; Propes v. Propes, 171 Mo. l. c. 416 *et seq.*] In Powell v. Powell, supra, l. c. 125, the court also ruled that "the statute relating to married women would require such a direction to be in writing."

In the case before us, however, there is no evidence and no finding that the wife ever directed that the deed should be made to herself and husband. We see no reason why, when the wife has purchased and paid for property, and is in possession of it, and she is thus the equitable owner of it, if the formal deed or document conveying the legal title should be made to her husband and herself, without her consent, instead of to her alone, that he should receive any more title, and she any less title, than if she had been a tenant in common, and in making partition, her share was set off by a deed purporting to convey the same to herself and her husband. The substance and very right of the matter is the same in each case. In neither case has the wife conveyed anything to her husband and she has done nothing to estop herself from claiming her own. Accordingly, it has been held that where a guardian purchases property at the instance of his ward, and for her benefit, and pays for it with her means, but it is conveyed to the ward and her husband jointly, the title was vested in the ward alone, the husband being vested with no interest therein. [Moore v. Moore, 12 B. Mon. l. c. 664; Simmons v. McKay, 5 Bush. 25; 13 R. C. L. p. 1110, and cases cited.] Also, where a wife has a perfect title to land, a deed executed by a third party to her husband and herself, and accepted by them, does not preclude the wife from setting up her original title. [Jackson ex dem. White v. Cary, 16 Johns. 302.] "It is one of the essentials of the peculiar estate by entireties sometimes enjoyed by husband and wife that the spouses be jointly entitled as well as jointly named in the deed. Hence, if the wife alone be entitled to a conveyance, and it be made to her and her husband jointly, the latter will not be allowed to retain the whole by survivorship." [Sprinkle v. Spainhour, 25 L. R. A. (N. S.) l. c. 169; Moore v. Moore, 12 B. Mon., supra.]

We hold, therefore, that under the circumstances in this case, the deed of September 12, 1896, made by George W. Richardson and wife to Elizabeth Middaugh and George Middaugh, her husband, conveyed no title

whatever to the husband, but vested the sole legal title in said Elizabeth Middaugh.

III.   Nor does the Statute of Limitations in any way deprive the plaintiffs, as the heirs of their mother, of the title to their property. There is an utter absence of evidence of adverse possession by George Middaugh during the life time of Elizabeth Middaugh. The lower court finds, and we agree to that finding, that, he, at all times during her life, recognized the equitable right of his wife in the property. He, therefore, did not claim to be in possession adversely to her. Furthermore, she was, herself, in possession of the property. In order to perfect title by adverse possession, the possession must not only be adverse and hostile, but it also must be *exclusive* and under claim of right, as against the owner. [Lumber Co. v. Craig, 248 Mo. 319; McCune v. Goodwillie, 204 Mo. 339; Long v. Coal Co., 233 Mo. l. c. 739; Buford v. Moore, 177 S. W. l. c. 869; Norfleet v. Hutchins, 68 Mo. l. c. 600.]

*Limitations.*

Since the Married Woman's Act of 1889 went into effect, the husband has no right, in cases governed by that act, as this case is, to the possession of his wife's real estate during the marriage. The right to possession of the wife's real estate, in such cases, is in the wife and not in the husband at all.

In Powell v. Powell, 267 Mo. l. c. 128, quoting with approval from Arnold v. Willis, 128 Mo. l. c. 150, this court, per GRAVES, J., says: "The Married Woman's Act as it now stands, in so far as the marital rights of the husband to the possession of land belonging to the wife are concerned, materially changed his common law rights, and in legal contemplation has completely deprived him of all the right to the possession or control of the increased and profits, as if it belonged to some other person."

So, in Teckenbrock v. McLaughlin, 246 Mo. l. c. 717, this court, per BLAIR, C., said: "So far as concerns the right of the husband in lands of the wife ac-

quired since 1889, the common law has been much modi-
fied by statute. In such lands, under the statute (Secs.
8309, 8304, R. S. 1909; Vanata v. Johnson, 170 Mo. 1.
c. 274-5) the husband has no right of possession during
the life of the wife, and she alone can sue therefor.''

In State v. Sinclair, 250 Mo. 1. c. 288, this court
said of Section 8309, Revised Statutes 1909: ''This
section has been construed to give the wife the exclu-
sive control of her real estate, regardless of whether
she is living with or apart from her husband, and re-
gardless of whether she is faithful or unfaithful to her
marital obligations. [Woodward v. Woodward, 148
Mo. 241.] However, she may voluntarily permit her
husband to remain in her home and enjoy the use of
her property without paying rent. [Donovan v. Grif-
fith, 215 Mo. 149.]''

But, the mere fact that by his wife's permission he
lives with his wife, as her husband, without paying rent
in a home which belongs to her, gives him no joint, nor
any control, or rights whatever, in the possession of her
home. This is the extent of the possession we find the
evidence shows that George Middaugh had of his wife's
property during her life. There is no evidence, and no
allegation in the answer, that he ousted his wife from
the possession of her property in any manner.

We, therefore, find that George Middaugh was not
in possession, nor in control of the property in contro-
versy, either jointly with or separately from his wife,
but that she was in the exclusive possession of it until
her death. Consequently, the Statute of Limitations
never started to run in favor of said George Middaugh
against his wife in her life time, and there was never
any adverse, nor any possession on his part until after
her death. She having died July 22, 1909, and this suit
having been brought December 27, 1916, the ten years
required to vest title by adverse possession had not ex-
pired when this suit was instituted. [DeHatre v. Ed-
monds, 200 Mo. 246; Snyder v. Elliott, 171 Mo. 362;
Rutter v. Carothers, 223 Mo. 631; Davis v. Cummins,
195 S. W. 752.]

IV. We have held that, under the circumstances in this case, the fraudulent or unauthorized insertion by the husband of his name in his wife's deed, as a grantee with her, was an absolute nullity, and, therefore, left the sole legal title in her, just as if his name had never been inserted in the deed. But the result of this case would be the same, if he took legal title with her, and held it as a resulting trust for her, as held by the learned court below, and as would have been the case had the deed been made to him alone. [Fogle v. Pindell, 248 Mo. 1. c. 75, and cases cited.] She was in exclusive possession during her life, and the husband was not in any manner in adverse possession during that time. She, being in possession, and her husband not in adverse possession, her equitable rights in her property were in no manner impaired by the mere lapse of time during her life (Goltermann v. Schiermeyer, 125 Mo. 304; Davis v. Cummins, 195 S. W. 1. c. 756); and as this suit was brought within less than eight years after her death, assuming that the husband's possession was adverse during that period, the plaintiffs, her children, are not barred by the Statute of Limitations, because ten years' adverse possession had not run against them prior to the filing of this suit. [Authorities, supra.]

*Resulting Trust.*

V. Reed v. Painter, 145 Mo. 341, is relied upon by respondents. That case is not to the point. It differs in essential features from this. Mrs. Painter was not in possession during her life time, and the husband was. Mrs. Painter did not have an equitable title to the land, before the deed was made, and the deed named the husband alone as grantee. It is, therefore, not necessary for us to determine whether the ruling in that case is out of harmony with the subsequent rulings of this court, as most earnestly pressed upon us by learned counsel for appellant.

*Painter Case.*

VI. The result is the judgment is reversed with directions to the lower court to set aside its judgment

herein and enter judgment on the first count of the pe-
Conclusion.   tition for the plaintiffs, declaring the plain-
tiffs are the owners in fee of the property
described in the petition, and the defendants have no
title thereto, and that the monthly rent of the property,
since the institution of this suit, is ten dollars per
month, which plaintiffs ·are entitled to recover from
defendants. The circuit court is also directed to enter
judgment for plaintiffs against defendants on the sec-
ond count of the petition, for possession of the prop-·
erty, and damages and monthly rent, at the rate of ten
dollars per month, as found due plaintiffs by the decree
upon the first count.

*Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion of SMALL,
C., is hereby adopted as the opinion of the court.
*Graves* and *Goode, JJ.,* concur; *Blair, P. J.* and *Wood-
son, J.,* concur in paragraphs 1, 3, 4, 5 and the result.