**Bobby J. STEPHENS, Petitioner–Respondent,**

v.

**Judy G. STEPHENS, Respondent–Appellant.**

No. 17622.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 14, 1992.

Debra A. Carnahan, Stephen F. Gaunt, David L. Steelman, Steelman & Beger, Rolla, for respondent-appellant.

John A. Clayton, Thomas, Birdsong & Clayton, P.C., Rolla, for petitioner-respondent.

FLANIGAN, Judge.

This action for dissolution of marriage was instituted, in July 1989, by Bobby J. Stephens against his wife Judy G. Stephens. The parties, who will be referred to by their first names, were married on July 25, 1980, and separated on July 10, 1989. The parties have one child, Savannah, who was born in 1985.

After an evidentiary hearing, the trial court, on May 14, 1991, entered its decree which: (a) dissolved the marriage, awarded Bobby and Judy joint legal custody of Savannah, and awarded Judy primary physical custody of Savannah; (b) ordered Bobby to pay $800 per month for child support, retroactive to July 17, 1989, and to maintain health insurance on Savannah, and awarded Bobby "the IRS deduction for the minor child"; (c) classified certain property valued at $53,675 as nonmarital property and distributed it to Judy; (d) classified certain property valued at $78,855.13 as nonmarital property and distributed it to Bobby; (e) classified property valued at $489,525 as marital property and distributed it to Bobby; (f) classified property valued at $16,575 as marital property and distributed it to Judy; (g) found that "the parties have incurred a tax liability with

the State and Federal Governments for back taxes and interest in the present amount of $111,059.70," ordered that Judy "shall be liable for one-half of said amount, together with one-half of any tax liability (including penalties) which may be assessed in the future as result of any tax liability arising from any state and federal taxes and sales taxes for [1984 through 1989], and Judy shall hold Bobby harmless for one-half of said indebtedness;" ordered that Bobby "shall be responsible for all other [income tax and sales tax] liabilities which may arise from taxes arising out of the years 1984 through 1991"; (h) credited Bobby with $55,529.85 as Judy's share of the tax liability mentioned in paragraph g, and credited Bobby with $14,863.59 for checks written by Judy; (i) ordered Bobby to pay Judy $158,319.06 in three installments, interest free, the last installment due on May 9, 1993. The amount of $158,319.06 was reached by awarding Judy $228,712.50 [1] "to balance the equities of the parties" and deducting the credits mentioned in paragraph h; (j) required Judy to pay specified debts totaling $21,551 and to hold Bobby harmless therefrom; (k) required Bobby to pay all outstanding obligations incurred by Stephens Family Steak House and any loans incurred at the First National Bank of Salem and to hold Judy harmless therefrom; and (l) denied Judy's request for an award of maintenance.

Judy appeals and challenges provisions (d), (h), and (l). Judy contends that the trial court erred: (1) in classifying certain real estate as Bobby's nonmarital property; (2) in giving Bobby the credit of $55,529.85 mentioned in paragraph h; and (3) in failing to award Judy maintenance.

Judy's first point is that the trial court erred in classifying the land on which the Stephens Family Steak House is located as nonmarital property of Bobby because the title to the land was jointly held by Bobby and Judy and there was no evidence to rebut the presumption that the land was marital property.

In April 1984, Bobby and Judy opened a restaurant known as Stephens Family Steak House. The steak house was located on land which Bobby and his former wife Sharon purchased in 1976. Bobby divorced Sharon shortly before his marriage to Judy. At the time of Bobby's marriage to Judy, title to the land was held by Bobby and Sharon as tenants in common.

After Bobby married Judy, Judy opened a beauty shop in a building on the land and operated it until 1983, when she moved the beauty shop operation to a house at 405 Washington to which Judy held the title and where she and Bobby made their home. Using money borrowed from Judy's father, Bobby and Judy substantially remodeled the building on the land before using it for the steak house business.

On November 23, 1983, two warranty deeds were exchanged which effected a voluntary partition of the land between Bobby and Sharon. By one deed, Exhibit 47, Sharon conveyed to Bobby and Judy the portion of the land on which the steak house was located later. That portion is the land in issue. By the other deed, Bobby and Judy conveyed to Sharon the remaining portion of the land.

Bobby testified that he and Judy had an agreement about the ownership of the land in issue and the house at 405 Washington. Bobby testified:

> Judy said she wanted her name put on my—put on my property. I'm talking about where the restaurant is now. It wasn't there yet. And I said, "Okay, if you'll put my name on the house." She said, "Okay." So we went down and signed some papers—This is when I and Sharon were getting—separating the property—and signed some papers. And I don't know if Judy's name got put over on actually where she actually owns or if

---

**1.** The findings of the trial court include the following: "The combined value of the real property, the equipment and the business known as Stephens Family Steak House, after considering debt, is $522,425.00. Of this amount, $65,000.00 is the value of the nonmarital interest of [Bobby] in the real estate. Consequently, the value of the business that is marital property is $457,425.00."

Although the judgment does not state a reason for awarding Judy $228,712.50, that figure is one-half of $457,425.

her name has been put on the restaurant property for sure or not. She never would—She said it was down at Max Price's. She said that she had taken her deed down there, and they were supposed to be fixing up papers for me to sign so that my name would be put on the restaurant—or on the house. I don't know, maybe six, eight months passed and I asked her about it, and she said, well, Max yet had it, nothing had been done, or they had never called. And I don't know, probably I asked her four or five times over a period; and then toward the end of '88 or whatever it was, she said she was not going to put my name on it—on the house.

Judy testified that the decision to build the steak house was made in 1983, and it opened in 1984. She said: "Bobby asked me what it would take for me to go in business with him and I told him my name on the land because I wanted some security. Bobby said, 'That's fine.' The next day Bobby went down and put my name on the land."

Referring to Exhibit 47, she said she had no idea who prepared the deed and that "Bobby took care of that." She said, "Bobby put my name on all the land, that was part of my deal with him." She also testified that "the deal" did not involve Judy "putting Bobby's name" on the premises at 405 Washington.

The findings of fact made by the trial court included: Bobby owned an undivided one-half interest [in the land on which the steak house was located] at the time he was married to Judy and acquired the other one-half interest in exchange for his nonmarital property, said interest being acquired in property exchanges arising out of the dissolution of his marriage to Sharon. "[Judy and Bobby] renovated an old feed store on [the land] and opened a restaurant. Two additions have been made to the building. The value of the land, which is nonmarital property of Bobby, is $65,000. The value of the improvements to the land is marital property. The business known as Stephens Family Steak House is a busy and popular eating establishment in the city of Salem. It has value in excess of the tangible assets. The marital residence located at 405 Washington is the nonmarital property of Judy and has a value of $50,-000."

Prior to the marriage of Bobby and Judy, title to the land in issue was held by Bobby and Sharon as tenants in common. After Bobby married Judy, Bobby and Sharon effected a voluntary partition of the land in issue and its other portion. At Bobby's instance, title to the land in issue was placed in Bobby and Judy as tenants by the entireties. Bobby and Judy gave differing versions on why that was done. With that background, it is necessary to examine the authorities which control the question of whether the land in issue became marital property or, as the trial court found, remained nonmarital property of Bobby.

In *Cross v. Huffman,* 280 Mo. 640, 217 S.W. 520, 522 (1919), the court said:

In this state it is the settled law that if the wife is a tenant in common, and there is a voluntary partition of the common estate, a deed, made to the husband and wife, as joint tenants or tenants by the entirety, conveys no estate to the husband, and invests the entire estate in the wife, even though the wife directed the deed to be made to her husband and herself jointly. This, for the reason that the wife really owned the title before the deed was made, and the only effect and purpose of the deed was to sever the possession of the property between the co-parceners. In such case, the land is the wife's by virtue of being a co-parcener, and not by virtue of the deed.

To similar effect see *Powell v. Powell,* 267 Mo. 117, 183 S.W. 625, 627 (1916); *Shull v. Cummings,* 174 Mo.App. 569, 161 S.W. 360, 361 (1913); *Whitsett v. Wamack,* 159 Mo. 14, 59 S.W. 961, 962–963[2] (1900).

In *Powell,* where the wife and a third person were tenants in common and effected a voluntary partition, the mere fact that the husband's name, at the direction of the wife, was included as a co-grantee with her in the deed of partition, was of no significance and the husband acquired no title. In *Powell,* 183 S.W. at 627 the court said:

The direction of the wife to have the deed thus made to the husband as well as to herself does not change the situation. The statute relating to married women would require such a direction to be in writing at least. But the better reason is that the deed conveys no title, and her direction to put his name therein does not change the character of deeds made in furtherance of voluntary partition. That her direction does not change the character of the deed has been expressly held in this state.

The foregoing cases [2] antedate the enactment in 1973 of the Dissolution of Marriage Act (§ 452.300–452.415).[3] Cases decided since that enactment enunciate the principles applicable here.

■■■ The placing of separate property of a spouse into the joint names of both spouses creates a presumption that the property transferred becomes marital property, and clear and convincing evidence is required to show the transfer was not intended as a gift. *Hankins v. Hankins*, 823 S.W.2d 161, 162[2] (Mo.App.1992); *Wilson v. Wilson*, 822 S.W.2d 917, 922–923 (Mo. App.1991); *Tracy v. Tracy*, 791 S.W.2d 924, 926–927 (Mo.App.1990); *Allen v. Allen*, 770 S.W.2d 529, 530 (Mo.App.1989); *Willenbrink v. Willenbrink*, 728 S.W.2d 732, 734 (Mo.App.1987); *Corbett v. Corbett*, 728 S.W.2d 550, 554–555 (Mo.App.1987); *Hylton v. Hylton*, 716 S.W.2d 850, 852 (Mo. App.1986); *Kramer v. Kramer*, 709 S.W.2d 157, 158–159 (Mo.App.1986); *Weiss v. Weiss*, 702 S.W.2d 948, 954 (Mo.App.1986); *Daniels v. Daniels*, 675 S.W.2d 29, 33–34 (Mo.App.1984). Property acquired after marriage which is placed in joint names is presumed to be marital property, even if one spouse furnished all the consideration. *Doll v. Doll*, 819 S.W.2d 739, 741[3] (Mo. App.1991); *Kramer*, at 158.

In *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo.banc 1984), the supreme court adopted the "source of funds" rule. In *Tracy*, 791 S.W.2d at 927, the court said: "Under that rule, the character of the property is determined by the source of funds financing the purchase.... *Hoffmann* did not, however, abolish our courts' theory of transmutation which is based on agreement or gift. *Kramer v. Kramer*, 709 S.W.2d 157, 159[7] (Mo.App.1986)." In *Kramer* the court said, at 159: "[W]e find nothing in [Hoffmann] which prevents a spouse, by his own agreement, express or implied, or by gift, from transmuting an item of separate property into marital property." To the same effect see *Rapp v. Rapp*, 789 S.W.2d 148, 151[7] (Mo.App.1990).

Section 452.330.4, as amended 1988, reads: "Property which would otherwise be nonmarital property shall not become marital property solely because it may have become commingled with marital property."

In *In re Marriage of Smith*, 785 S.W.2d 764, 766 (Mo.App.1990), the court said:

Prior to the enactment of [§ 452.330.4], this court held that the commingling of separate property with marital property transmuted the separate property into marital property. Newly enacted RSMo § 452.330.4 clearly indicates that such commingling, without more, will not transmute separate property into marital property. We find that this provision is specifically intended to address situations where the separate property of one party is transmuted into marital property simply by virtue of its being "commingled" or mixed with what is considered to be marital property. ... Appellant, only four months after marrying respondent, had the deed to the home placed in both his and respondent's names. The execution of this deed represents evidence of appellant's donative intent to create marital property. Indeed, the addition of a spouse's name to a document

---

**2.** The principles quoted from the foregoing cases were applied by this court in *Keith v. Keith*, 599 S.W.2d 214 (Mo.App.1980), a partition action. *Keith* did not involve the Dissolution of Marriage Act. In *Kinnick v. Kinnick*, 621 S.W.2d 104 (Mo.App.1981), there was a dissolution proceeding, and the court cited *Keith* and *Cross v. Huffman, supra.* To the extent that *Kinnick* may depart from the instant holding, it should no longer be followed.

**3.** All references to statutes are to RSMo 1986, V.A.M.S.

of title of a residence creates a tenancy by the entirety and the property is presumed to be marital. We do not believe RSMo § 452.330.4 reverses this marital presumption.

Moreover, the appellant's creation of a tenancy by the entirety constitutes more than a mere commingling and, therefore, the trial court's refusal to set aside appellant's $36,000.00 down payment as his separate property was not an erroneous application of RSMo § 452.330.4. (Authorities omitted.)

In *Tracy*, 791 S.W.2d at 926–927, the court said that Missouri courts had held under common law principles that when real estate is purchased by the husband and deeded to both husband and wife as tenants by the entirety, a presumption arises that the husband intended to make a gift to or a provision for the benefit of his wife and that in such cases the husband has the burden to show by clear and convincing evidence that he did not intend to make a gift to his wife or make a provision for her. The court said that § 452.330.3 did not "overrule the common law presumption of settlement or gift which is created by joint titling." The court quoted with approval, and described as "sound law today," the following language contained in *Conrad v. Bowers*, 533 S.W.2d 614, 622 (Mo.App.1975):

We believe, rather, that the general assembly intended that all property acquired subsequent to the marriage taken in joint names of husband and wife is marital property subject to division upon dissolution, unless (1) it is shown that the property acquired subsequent to the marriage was acquired in exchange for property acquired prior to the marriage *and* (2) it is shown by clear and convincing evidence that the transfer was not intended as a provision for a settlement upon or as a *gift* to the *other* spouse. (Emphasis in original.)

■ Where a husband has caused his separate property to be transferred to his wife and himself jointly, his mere self-serving testimony that he did not intend a gift to his wife, although admissible, is entitled to little weight. *Tracy, supra*, at 927, citing *Hampton v. Niehaus*, 329 S.W.2d 794, 800 (Mo.1959). "[J]oint titling of real property creates a strong presumption of transmutation by gift, as does use of the property for marital purposes." *Tracy, supra*, at 927.

In *Doll*, 819 S.W.2d at 741, the court said:

A distinction exists between commingling and joint title. Under the 1988 amendment, [§ 452.330.4], separate property titled in one spouse's name alone remains separate property even when the increase (interest, dividends, etc.) on that property is added to the original separate property. The increase is not "commingling." . . .

However, the 1988 amendment does not alter the effect of joint title of property. Property acquired after marriage which is placed in joint names is presumed to be marital property, even if one spouse furnished all of the consideration.

■ By the voluntary partition neither Bobby nor Sharon received any interest not previously held. The partition destroyed the tenancy in common and defined the boundaries of the land in which each respectively retained an interest. That result could have been accomplished by the naming of Bobby as sole grantee in the deed which he received, and Bobby had the power to demand such a deed. He did not do so.

The deed which defined the boundaries of his interest was made jointly to Bobby and Judy. Judy gave specific testimony, set out earlier, that her name was included by agreement and at her insistence. It is very significant that the improvements on the land in issue were financed by a loan from Judy's father. Bobby's testimony, set out earlier, was indefinite, and he did not specifically rebut Judy's testimony. Although he testified that the title to 405 Washington was also to be made joint, that was not done. There is no evidence that Bobby complained about that fact prior to the filing of the dissolution action.

In short, Bobby's testimony falls short of clear and convincing evidence sufficient to

rebut the presumption of gift. The credibility of Bobby's weak and indefinite testimony is further diluted by the fact that he is a self-confessed persistent tax evader. This court holds that the inclusion of Judy's name with that of Bobby as cograntee on Exhibit 47, and the delivery of that deed, transmuted Bobby's nonmarital interest in the land in issue into marital property and that the trial court erred in ruling otherwise. Judy's first point is valid.

■ Although Judy's first point is legally sound, error by the trial court in classifying property is not necessarily prejudicial error. *In re Marriage of Garrett*, 654 S.W.2d 313, 316[1] (Mo.App.1983); *Puckett v. Puckett*, 632 S.W.2d 83, 84 (Mo.App. 1982). This court does not reverse any judgment unless it finds that error was committed by the trial court against the appellant "materially affecting the merits of the action." Rule 84.13(b). This court holds that the error here was prejudicial and will grant the appropriate relief after Judy's second point is discussed.

■ Judy's second point is that the trial court erred in crediting Bobby with $55,529.85 as Judy's share of the tax liability of the parties because Bobby used marital funds totaling $36,059.70 in discharging the tax liability which totaled $111,059.70.

Bobby, during examination by his own counsel, testified that in order to make the payment of $111,059.70 he borrowed $75,000, and the balance "has been paid out of the restaurant." He also testified that he borrowed the $75,000 from the First National Bank of Salem. As paragraph (k) of the second paragraph of this opinion points out, Bobby was ordered to hold Judy harmless from any loans incurred at that bank.

The trial court, in giving Bobby the challenged credit, clearly intended to require Judy and Bobby to share equally the burden of the tax liability of $111,059.70. Since, however, $36,059.70 of marital funds was used in the discharge of that liability, Judy should receive credit for one-half of that payment, which is $18,029.85.

The facts on which Judy's second point is based are supported by Bobby's testimony, and he does not challenge them here. In *Dove v. Dove*, 773 S.W.2d 871, 873 (Mo. App.1989), the court said: "As often stated, a division of marital property doesn't have to be even, it just has to be fair." Bobby's response to Judy's second point is to quote that language from *Dove*.

Section 452.330.1, as amended in 1988, sets forth factors, nonexclusive, to be considered by the court in dividing marital property. They are:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

The record supports the following findings made by the trial court: Both parties are in good health and are capable of contributing to the support of their child; Bobby, as the "manager/owner" of the steak house, has a monthly gross income of $8,300; Judy has a potential monthly income of $600; "Judy is unemployed but that unemployment is voluntary. She is a licensed beautician with experience, and is also a licensed real estate sales person. The minor child is not a hindrance in Judy's obtaining employment"; both Judy and Bobby engaged in marital misconduct during the marriage and, in that respect, "contributed equally to the dissolution of the marriage."

Although the trial court made no specific finding with respect to the factor set forth in § 452.330.1(2), the record shows that they contributed equally to the acquisition

of the marital property. The trial court classified certain property valued at $78,855.13 (including, erroneously, the land discussed under Judy's first point) as nonmarital property and distributed it to Bobby, and classified certain property valued at $53,675 as nonmarital property and distributed it to Judy. In fine, there is nothing in the record, and the trial court made no factual finding otherwise, to justify awarding Judy less than approximately 50 percent of the marital property.

The trial court erroneously classified the land, valued at $65,000, as Bobby's separate property, and Judy is entitled to relief of $32,500 to correct that error. The error discussed under Judy's second point entitles Judy to relief of $18,029.85. With the foregoing factors in mind, and in consideration of the entire record, this court holds that an appropriate adjustment in the division of the marital property requires that Judy be awarded, in addition to the awards contained in the May 14, 1991, decree, the sum of $50,529.85, said $50,529.85 to bear interest at the lawful rate from and after May 14, 1991, to be payable by Bobby on the date the mandate of this court is received in the trial court.

■ Judy's third point is that the trial court erred in failing to award her maintenance "in that the evidence clearly established that [Judy] lacked sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment."

Section 452.335.1 reads, in pertinent part:

In a proceeding for ... dissolution of marriage ... the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

This court has considered Judy's third point in light of the record and the additional relief awarded Judy on this appeal. This court concludes that Judy does not lack sufficient property, including marital property apportioned to her, to provide for her reasonable needs. Judy's third point has no merit.

The judgment of May 9, 1991, is hereby modified by adding thereto, as its final paragraph, the following: "Petitioner is ordered to pay Respondent the sum of $50,529.85, together with interest thereon at the lawful rate, from and after May 14, 1991." As so modified, the judgment is affirmed.

MONTGOMERY, P.J., and PREWITT, J., concur.