Virginia Rose TRACY, Appellant,

v.

James Keifer TRACY, Respondent.

No. 16263.

Missouri Court of Appeals,
Southern District,
Division Two.

June 21, 1990.

Robert S. Wiley, Crane, for appellant.

John R. Lewis, J. Patrick Sullivan, Law Offices of John R. Lewis, Kimberling City, for respondent.

HOGAN, Judge.

In this action for dissolution of marriage, petitioner Virginia Rose Tracy, to whom we shall refer as the plaintiff, appeals from that part of the amended decree which set apart to each spouse his separate property and divided the marital property as required by § 452.330.1, RSMo 1986.[1]

The parties were married in 1978. They were finally separated July 24, 1988. At trial time the plaintiff was 65 years of age. She was afflicted with rheumatoid arthritis,

---

**1.** References to statutes and rules are to RSMo 1986 and V.A.M.R., except where otherwise specifically noted.

which affects her "whole body." The respondent, to whom we shall refer as the defendant, was nearly 70 years old when the case was tried. His health was also poor; he had degenerative arthritis and a stomach ulcer. The defendant has apparently been a very successful businessman. He testified that he had accumulated assets worth "around $330,000" when he married the plaintiff. Plaintiff, by contrast, received a Social Security payment in the amount of $243 per month and had "about $1,900 or $2,000" which she had inherited at the time the parties were married. There is evidence that both plaintiff and defendant had previously been married at least once.

The parties' marriage was not a happy marriage. During the course of the trial, each party accused the other of misconduct, including marital infidelity. The trial court heard evidence on October 28, 1988, and thereafter prepared and filed an extensive decree setting out the parties' property rights and dividing their separate and marital property. Plaintiff filed an alternative motion for new trial or to amend the judgment and opinion as permitted by Rule 73.01(a)(3) and the trial court heard evidence and argument on this motion on February 16, 1989. On March 9, 1989, the trial court amended its decree.

The plaintiff has briefed and argued three assignments of error in this court. The substance of those assignments is that the trial court erroneously determined that the family residence was not entirely marital property and erroneously determined that the proceeds of a $50,000 loan obtained upon the security of the marital residence were the defendant's separate property. These erroneous determinations, plaintiff argues, have resulted in a manifestly unfair and inequitable division of the parties' marital assets. We realize that we are obliged to affirm the decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 822[1] (Mo.banc 1984); *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo.banc 1976). Although we have considerable respect for the trial court's judgment, our review of the record has generated a firm belief that the decree is in part against the weight of the evidence and that the law has been erroneously applied. Believing the record is fully developed, we give such judgment as the trial court should have given, as authorized by Rule 84.14.

I

■ We have first to consider whether the parties' residence should have been classified as marital property. The plaintiff's trial theory was that the residence was marital property because title to the property was taken by the parties as tenants by the entirety when it was purchased. The defendant's trial theory was that the residence was his separate property because it was purchased and improved with his separate funds. The trial court found that the residence was in part a nonmarital asset and in part a marital asset. We have concluded that the residence should have been classified as marital property.

(a)

■ The principles to be applied in classifying the residence as marital or nonmarital property are familiar. Our courts have consistently held that when real estate is purchased by the husband and deeded to both the husband and wife as tenants by the entirety, a presumption arises that the husband intended to make a gift to or a provision for the benefit of his wife. *Dallmeyer v. Dallmeyer*, 274 S.W.2d 250, 254 (Mo.1955); *Gaede v. Smith*, 354 Mo. 738, 741, 190 S.W.2d 931, 932 (Mo.1945); *Hiatt v. Hiatt*, 168 S.W.2d 1087, 1090[7–9] (Mo. 1943). In such cases and in cases where the husband pays the purchase price and causes title to the property to be transferred to his wife, the husband has the burden to show by clear and convincing evidence that he did not intend to make a gift to or provision for his wife. *Hampton v. Niehaus*, 329 S.W.2d 794, 799 (Mo.1959); *Hebron v. Hebron*, 566 S.W.2d 829, 832 (Mo. App.1978). Of course, Missouri adopted a

version of the Uniform Marriage and Divorce Act in 1973. Laws of Mo. 1973, H.B. 315. Section 452.330.2(2) provides that property acquired in exchange for property acquired prior to the marriage is considered to be nonmarital property. Section 452.330.3, in material part, provides that all property acquired by either spouse subsequent to the marriage is presumed to be marital property whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. Section 452.330.3 further provides that the presumption that all property owned by either spouse is marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of § 452.330.

In *Conrad v. Bowers*, 533 S.W.2d 614 (Mo.App.1975), the court considered the impact of the quoted part of subsection 3 of § 452.330 upon the common law rule that when title to real estate is taken in the name of husband and wife, even though the husband furnishes the consideration, it is presumed that the husband intended the conveyance as a provision for or a settlement upon his wife and no trust results in favor of the husband. The court held that the General Assembly did not intend to overrule the common law presumption of settlement or gift which is created by joint titling. Rather, the court concluded:

> "... We believe, rather, that the general assembly intended that all property acquired subsequent to the marriage taken in joint names of husband and wife is marital property subject to division upon dissolution, unless (1) it is shown that the property acquired subsequent to the marriage was acquired in exchange for property acquired prior to the marriage *and* (2) it is shown by clear and convincing evidence that the transfer was not in-

tended as a provision for a settlement upon or as a gift to the other spouse." (Emphasis in original.)

*Conrad v. Bowers*, 533 S.W.2d at 622. We consider the holding of the *Conrad* case to be sound law today and believe it is applicable to the case at hand. We do not overlook *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo.banc 1984), wherein our Supreme Court adopted the "source of funds" rule. Under that rule, the character of the property is determined by the source of funds financing the purchase. *Hoffmann v. Hoffmann*, 676 S.W.2d at 824. *Hoffmann* did not, however, abolish our courts' theory of transmutation which is based on agreement or gift. *Kramer v. Kramer*, 709 S.W.2d 157, 159[7] (Mo.App.1986).[2]

Other principles of law applicable here by analogy are that parol evidence is admissible to show the parties' intent, despite the strictures of the parol evidence rule, *Hampton v. Niehaus*, 329 S.W.2d at 800; *Forsythe v. Forsythe*, 558 S.W.2d 675, 678[6][7] (Mo.App.1977), although the husband's declaration that he intended no settlement upon or gift to the wife, standing alone, is entitled to little weight. *Hampton v. Niehaus*, 329 S.W.2d at 800. Evidence of the husband's acts and conduct with reference to the property subsequent to the time of the acquisition of title is admissible as tending to prove his intent at the time of the transfer. *Hampton v. Niehaus*, 329 S.W.2d at 800. As we have noted, joint titling of real property creates a strong presumption of transmutation by gift,[3] as does use of the property for marital purposes. See *Burgess v. Burgess*, 710 P.2d 417 (Alaska 1985). With these principles in mind, we must inquire whether the defendant sustained his burden to rebut the presumption of gift by clear and convincing evidence.

2. "Source of funds is a theory for classifying property by analyzing the time and nature of acquisition of the property, whereas transmutation is a method for determining whether the parties during or after the acquisition process *intended* the property to have a different classification than that indicated by the acquisition process alone. Therefore, adoption of the source of funds theory is compatible with con-

tinued recognition of transmutation...." J. Krauskopf, The Transmutation and Source of Funds Rules in Division of Marital Property, 50 Mo.L.Rev. 759, 775 (1985).

3. L. Golden, Equitable Distribution of Property (Supp.1989 p. 76).

(b)

When the parties were first married, they lived on a 32–foot power boat which was kept in a dock near Sarasota, in Florida. They thereafter moved several times and finally came to Kimberling City, Missouri in 1982. The defendant sold his boat before he and the plaintiff moved to Missouri; his recollection was that he realized $70,000 from the sale of the boat and invested the proceeds in a money market fund. At some point the parties decided to purchase a house in Kimberling City. The house was purchased through a Kimberling City real estate agency for $45,000. Plaintiff described the house as a "modern colonial house" with eight rooms and three baths. The house has two floors but it is not a conventional two-story house. There is a first floor and a "basement" floor, described by the plaintiff as a "walk-in basement."

Proof of the parties' intent was made by showing their declarations at the time the sale of the residence was closed. The defendant testified at one point that he wanted to take title to the property in his name only because the property was purchased primarily for resale. He was pressed for a reason why the plaintiff's name appeared as a grantee on the deed. He responded: "Her name appears here because the real estate agent would not do it any other way." The defendant maintained the plaintiff agreed that the house would be his house and he could do whatever he wanted with it. He further testified that the plaintiff agreed she would claim no interest in the property. The plaintiff denied she had made any such agreement. The defendant had the evidence of Don Simpson, a real estate agent who had been present when the parties took title to the house and lot which became their residence. Mr. Simpson testified that the defendant objected to the plaintiff's being named as a grantee. The parties conferred, according to Mr. Simpson, and the defendant agreed to take title to the property jointly with his wife.

(c)

The trial court found that the parties' residence was in part a marital asset and in part a nonmarital asset. Twenty-five thousand dollars of the purchase price was paid at the time the parties took title to the house, and they jointly borrowed $20,000 to finance the balance of the purchase price. The defendant testified that he paid $25,000 out of his money market fund and obtained a loan at the Bank of Kimberling City to pay the balance. The trial court concluded on this basis that the residence was 56 per cent the defendant's separate property and 44 per cent marital property. We realize that when property is acquired by an expenditure of both marital and nonmarital funds, the property so acquired is characterized as part marital and part nonmarital. Thus, it has been held, a spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution. *Neal v. Neal*, 776 S.W.2d 861, 866 (Mo.App.1989); *In re Marriage of Herr*, 705 S.W.2d 619, 623–24 (Mo.App.1986). It is not necessary to discuss the rulings in *Neal* and in *Herr*, however, for we are convinced the evidence was not sufficient to rebut the presumption of transmutation by gift.

The defendant, we reiterate, had the burden to show by clear and convincing evidence that taking title to the residence as tenants by the entirety was not intended as a provision for a settlement upon or as a gift to his spouse. *Conrad v. Bowers*, 533 S.W.2d at 622; see, also, *March v. Gerstenschlager*, 436 S.W.2d 6, 8[1] (Mo.1969). Defendant's proof that he intended no transmutation by gift was much similar to that which has been held insufficient to rebut the presumption of gift in analogous cases. The defendant's repeated declarations that he intended no gift were admissible but, as the court held in *Hampton v. Niehaus*, 329 S.W.2d at 800, the evidence as to the circumstances of acquisition, excluding the defendant's self-serving declarations, are

as consistent with an intention to make a gift as they are with an intention not to do so. The evidence that the defendant maintained and improved the property simply describes a course of conduct which it would be perfectly natural for any husband to pursue with respect to the family residence. The evidence that the residence was used as a home for the parties and was occupied by them and by members of the defendant's family, particularly his grandchildren, militates against the conclusion that the property was purchased solely as an investment. See, generally, *Hovey v. Hovey*, 379 S.W.2d 621, 625 (Mo.1964); *Hampton v. Niehaus*, 329 S.W.2d at 800–801[7, 8]. In the circumstances here present, the residence must be classified as marital property. L. Golden, supra, § 5.30, p. 129.

## II

■ Plaintiff's second and third points, the substance of which has been stated, expand her first assignment of error. The plaintiff argues that the trial court erred in awarding her only a part of the net increase in the value of the residence and in failing to allow her a fair share of the appreciated value of the family residence. Plaintiff also argues, as we have noted, that the proceeds of a $50,000 loan borrowed jointly and made upon the security of the marital residence in December 1987 were erroneously classified as the defendant's separate property. We believe there is merit in these arguments.

In December 1987, the parties obtained a loan of $50,000 (they actually realized $48,-655.72) from the Great Southern Savings and Loan Association. The plaintiff testified it was the defendant's idea to borrow the money and the trial court concluded the loan was obtained at his insistence. The trial court found as a fact that the $50,000 note and deed of trust on the marital residence were executed by both parties, and thereafter the net proceeds of the loan were deposited to the defendant's account. On January 4, 1988, this account was made payable to the defendant's grandson upon the defendant's death. To dispose of the plaintiff's second and third points, we must determine whether the proceeds of the $50,000 loan should have been characterized as marital property.

### (a)

■ The ownership of the proceeds of a loan secured by marital property has been the subject of discussion in foreign jurisdictions. We find that several approaches have been employed to characterize the proceeds of a loan as being marital or separate. J. Oldham, Divorce, Separation and the Distribution of Property, § 7.05[2], pp. 7–17, 7–18 (1990). One test focuses upon the collection rights of the lender; another similar approach characterizes loan proceeds according to the character of the property provided as security. J. Oldham, supra, at p. 7–18. Jurisdictions which apply rules of law similar to those applicable under our dissolution statute have reached the conclusion that the proceeds of a loan made upon the security of one spouse's estate are separate property, and those made upon the security of the marital estate are marital property. See, e.g., *Winn v. Winn*, 105 Idaho 811, 673 P.2d 411, 414[11] (1983); *Mortenson v. Trammell*, 604 S.W.2d 269, 275 (Tex.Civ.App.1980). It has been recognized that if there is an actual, articulated intent between the spouses that the obligation shall be a separate or marital obligation, that intent will control. *Winn v. Winn*, 673 P.2d at 414. As the Idaho court noted in the *Winn* case, there is a distinct lack of consistency of approach to this area of the law. *Winn v. Winn*, 673 P.2d at 413; J. Oldham, supra, at pp. 7–17, 7–18. Nevertheless, for the purposes of characterization and division of property upon dissolution, it is necessary to consider the nature of the funds expended to improve the marital residence.

The decree recites that the $50,000 loan (from which the parties realized $48,655) was obtained by the parties' execution of a note and deed of trust at the Great Southern Savings & Loan Association. The funds were deposited to the account of James R. Tracy. The defendant at one point conceded that the obligation was a

joint obligation.[4] Because the money was borrowed on the security of the marital residence, which we consider to be a marital asset for the reasons stated, and because there was no clear agreement by the spouses that the debt was to be the separate obligation of the defendant, we consider the proceeds of the loan to have been marital property.

(b)

Having concluded that the marital residence was marital property and that the proceeds of the $50,000 loan obtained on the property in December 1987 were marital property, we are obliged to determine whether the division of those assets was fair and equitable. Section 452.330.1 does not require an equal division of the marital property; it does require a fair and equitable division of the property in light of the circumstances attending each individual case. *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo.banc 1984); *Lewis v. Lewis*, 637 S.W.2d 207, 209 (Mo.App.1982). It is necessary, unfortunately, to set out the decree in some detail. Where possible, the decree has been summarized.

The decree recites that the major dispute of the parties centered upon their marital residence. The defendant contended that the residence was his separate property; plaintiff maintained that the residence was marital property. The decree further recites that the residence is a large modern structure which has been substantially improved since it was purchased for $45,000 in 1982; the property was titled in the names of both parties, and the parties jointly borrowed $20,000 to finance the purchase. The defendant testified that his separate funds were used to purchase the residence but produced no documents to corroborate his testimony.

The decree then specifically recites the court's finding that the defendant did not intend to make a settlement upon or to make a gift to the plaintiff by taking title to the property in his name and plaintiff's name as tenants by the entirety.

Continuing, the decree recites the trial court's finding that the plaintiff invested $1,800 in improvements to the property and that the funds invested by the plaintiff were her separate property. The defendant had, the court found, invested $27,000 of his separate funds in improving the residential property. The decree further recites that additional improvements in the amount of $8,800 were made from the proceeds of the $50,000 loan. The outstanding balance of the loan, the court noted, was $49,970, which was being paid in monthly payments of $358.21.

The court further found that the present fair market value of the residence was $87,000; the purchase price was $45,000. Therefore, the total increase in the value of the residence amounted to $42,000. The increase was found to consist of $8,800 from the proceeds of the $50,000 loan, $1,800 from the plaintiff's separate property, and $4,400 "net" increase, after deducting the $27,000 which defendant expended from his separate funds. It was further found that this "net" increase should be divided in proportion to the parties' separate and marital contributions to the purchase price of the realty, that is, $2,464 of the "net" increase should be regarded as the defendant's separate property, and $1,936 of the "net" increase should be regarded as marital property. Combining the $1,936 "net" increase with the $8,800 marital increase resulted in a finding that $10,736 of the increase in value was marital property; $29,464 of the increase in value was defendant's separate property, and $1,800 of the increase in value was plaintiff's separate property. The proceeds of the loan were accounted for by the court, and we shall discuss that aspect of the decree presently.

The court awarded the marital residence, subject to the indebtedness thereon, to the defendant. The plaintiff was awarded the sum of $7,168 as and for her share of the

---

**4.** R. 253: "Q. Now, this $50,000 loa, [sic] Virginia signed and she's obligated on that too; isn't she? A. I don't think she has any obligation— Well, yes. I suppose she does have an obligation."

value of the residence, which consists, as the trial court calculated the allowance, of $5,368, one-half the marital increase in the value of the residence, plus her nonmarital contribution of $1,800.

(c)

We consider the trial court's finding that the defendant expended $27,000 of his separate funds to improve the property to be reasonably inferable from the evidence. The defendant testified directly that he improved the residential property by 1) constructing a two-car garage with a deck; 2) constructing a 12′ × 14′ toolshed; 3) completing a downstairs bathroom; 4) carpeting the "downstairs;" 5) partitioning and finishing the basement; 6) replacing a double window with a door and improving and constructing a 28′ × 32′ deck; 7) remodeling the "upstairs" bathroom; 8) replacing cupboards in the kitchen, and 9) remodeling a bedroom. The defendant testified to having had these repairs and improvements made and he testified that the remodeling was paid for "[o]ut of my savings, out of monies that I had." In computing the mar-

ital interest in the residence, assuming the formulas applied in *Neal*, 776 S.W.2d at 866–67, and *Herr*, 705 S.W.2d at 624–25, were used, this court would factor in the value of improvements made to the property from nonmarital funds. In this case, however, the reasonable inference from the record is that the funds spent by the defendant in making repairs were replaced or "replenished" from the proceeds of the loan. Inasmuch as the defendant has been reimbursed for the improvements made on the marital residence, the improvements in the amount of $27,000 have become part of the marital estate.

As noted, the disposition of the proceeds of the $50,000 loan were accounted for in the trial court's decree. The decree recites that the net loan proceeds of $48,655.72 were deposited to the defendant's account at the Great Southern Savings and Loan Association on December 27, 1987. The existing loan balance was found to be $49,-674.04. The balance in the account at the time the loan funds were deposited was $4,557.64. The following disbursements were made:

| "Date | Check | | Amount |
|-------|-------|------------------------------|------------|
| 12–30–87 | # 105 | Boatmen's National Bank | $15,380.14 |
| 01–04–88 | # 106 | Cash | 5,000.00 |
| 01–04–88 | # 107 | Cash | 1,000.00 |
| 01–09–88 | # 108 | Soto Travel | 1,296.31 |
| 01–26–88 | # 109 | Cash | 5,000.00 |
| 01–27–88 | # 110 | Cash | 5,000.00 |
| 05–06–88 | # 120 | Bank of Kimberling City | 1,500.00 |
| 05–16–88 | # 122 | Bank of Kimberling City | 1,000.00 |
| 05–23–88 | | (Mercantile Bank of Table Rock Lake) | 5,000.00 |
| 05–30–88 | # 202 | Kimberling Hills Co. Club | 697.80 |
| 05–22–88 | # 124 | John D. Shannon | 300.00 |

TOTAL: $41,174.25

Account balance 09–20–88: $8,664.97
Beginning balance 12–29–87: − 4,557.64
$4,107.33

4,107.33
$45,281.58

Thus the sum of $45,281.58 of the loan proceeds can be explained as set forth above, the disposition of the remaining $3,374.14 being accounted for by several smaller checks and loan payments to

Great Southern which were automatically deducted from the account.

The four checks for $5,000.00 were used to purchase four $5,000.00 certifi-

cates of deposit as follows, in the name of James K. Tracy:

Great Southern

CD5316077501, $5,000.00, 01–04–88, P.O.D. James K. Tracy III

CD5342077723, $5,000.00, 01–26–88, P.O.D. James K. Tracy III

CD5335078613, $5,000.00, 05–24–88, P.O.D. John D. Shannon

Mercantile Bank of Table Rock Lake

CD Acct 026 0007901, $5,000.00, 01–27–88

The check to Boatmen's National Bank for $15,380.14 paid for the 1987 VW auto. The check for $1,296.31 to Soto travel was cashed in Hawaii and apparently related to the trip of Mr. Tracy to Hawaii. The sum of $2,500.00 was deposited in Mr. Tracy's account with the Bank of Kimberling City. Interest from the certificates with Great Southern are being deposited in the Great Southern account, and the home mortgage payments are being deducted from that account. However, the payments have only reduced the principal by $325.96, since the inception of the loan."

The trial court found as a fact that the parties had a total of $20,000 in four certificates of deposit registered in the defendant's name, as set forth above. Defendant's account at Great Southern had a balance of $8,664.97, which included $4,107.33 found to be nonmarital property. The parties also had a checking account at the Mercantile Bank of Table Rock Lake in the amount of $368.13 and a checking account at the Bank of Kimberling City in the amount of $3,892.11. The account at the Bank of Kimberling City stood in the defendant's name. The defendant was awarded the four certificates of deposit, the bank account at the Bank of Kimberling City and the account at Great Southern Savings and Loan. The plaintiff was awarded the account at the Mercantile Bank of Table Rock Lake in the amount of $368.13.

## III

### (a)

In order to determine whether the distribution of marital property was fair and equitable in the circumstances, we must, among other things, look to the total distribution of assets and the assignment of debts made by the trial court. We summarize the distributive parts of the decree. The items to be considered are as follows: 1) The defendant was awarded as nonmarital property 10 items of personal property valued at $11,085 and 14 lots located in Ozark County; the total value of this personalty and real estate is $26,085. 2) Plaintiff was awarded marital personal property (household furnishings) of the value of $2,264.00. 3) Defendant was awarded marital household furnishings and miscellaneous property of the value of $6,488. 4) The defendant was awarded the marital residence subject to an encumbrance in the amount of $49,674, which the defendant was ordered to pay. 5) The defendant was awarded the account at Great Southern in the amount of $8,644.97 (including $4,107.33 of the loan proceeds), and $20,000 in certificates of deposit which were, as noted, purchased with the proceeds of the loan. 6) The defendant was awarded an automobile valued at $10,000; this automobile was purchased with the proceeds of the joint loan on the residence. The plaintiff was awarded another automobile valued at $10,000, subject to an encumbrance in the amount of $6,377, which the defendant was ordered to pay. 7) Plaintiff was ordered to pay $1,000 which she had borrowed from the Bank of Kimberling City; defendant was ordered to pay a balance due on the residential improvements (approximately $3,000). 8) Defendant was ordered to pay maintenance to the plaintiff in the amount of $250 per month beginning February 11, 1989 and continuing until plaintiff dies or remarries, or until the defendant dies. 9) The plaintiff was awarded the lump sum of $11,023 in cash to equalize the distribution of marital property. The court indicated that the sum awarded to equalize the distribution of marital property consisted of an allowance of $7,168 as plaintiff's share of the increase in value of the marital residence, plus $4,224 difference in value of marital personalty, less the

$368.13 balance in the bank account at Mercantile Bank of Table Rock Lake.

As noted, the plaintiff filed an alternative motion for new trial or to amend the judgment and opinion pursuant to Rule 73.-01(a)(3) and the trial court heard arguments and some evidence when the motion was taken up. The distribution of property was altered so as to increase the value of the marital property awarded to the plaintiff by $167.50 and to increase the value of the marital property awarded to the defendant by $892.50. The court increased the cash allowance made to the plaintiff to equalize the distribution of marital property from $11,023.87 to $11,386.37.

### (b)

■ By our calculation and according to the law as we understand it to be, the parties, during their marriage, acquired a considerable amount of marital property. Inasmuch as the presumption of transmutation by gift which arose from the joint titling of the residence was not rebutted, the residence, valued at $45,000, was marital property. The improvements and the appreciated value of the property—the $4,400 net increase—$42,000 in all, should also have been considered as marital property. Moreover, the proceeds of the $50,-000 loan ($48,655.72 actually realized) should have been considered marital property. Twenty-seven thousand dollars of that sum, as we have noted, went to "replenish" the separate funds the defendant spent on property improvements, but the remainder of the $50,000 loan ($21,655.72) should have been considered as marital property. So, all in all, the parties accumulated marital property of the value of $108,-655.72, subject to an encumbrance in the amount of $49,674.04. The net value of the marital estate, factoring in the encumbrance, is $58,981.68. The plaintiff has been awarded a lump sum of $11,386.37 to equalize the marital property distribution. This distribution is, of course, based on the determination that the defendant did not intend the joint titling of the residence to effect a settlement upon or a gift to the plaintiff, and upon the assumption that the proceeds of the $50,000 loan were the defendant's separate property.

■ The court has also ordered that the defendant pay the plaintiff the sum of $400 per month as maintenance, but to the extent possible, an award of maintenance should not be substituted for a spouse's share of the marital estate. Some award of the parties' liquid or easily convertible assets should be made to the plaintiff so she may insulate herself against the possibility that the defendant may predecease her and, to some extent, against the declining value of money. *Spicer v. Spicer*, 585 S.W.2d 126, 129[2][3] (Mo.App.1979). The parties' personal situations must also be considered. The plaintiff was 65 years of age; she has rheumatoid arthritis. The defendant was 70 years old. He has an ulcer and degenerative arthritis. Neither party will be able to compete in the business world. Although the defendant's regular income is modest, he testified that he had assets of the value of $330,000 at the time he was married to the plaintiff. Plaintiff's assets—aside from the property awarded to her by the decree—consist of a $243 monthly Social Security payment. Given the widely disparate financial resources of the parties and the considerable size of the marital estate, the plaintiff should be awarded an additional $15,000 in cash to equalize the distribution of marital property. It is ordered that the decree be so amended; in all other respects the decree is affirmed.

FLANIGAN, P.J., and PREWITT, J., concur.

SHRUM, J., not participating because not a member of the court when case submitted.