**Antonio M. WILLIAMS, Appellant,**

v.

**Sherry L. WILLIAMS, Respondent,**

**Guardian ad Litem, Respondent.**

No. WD 53397.

Missouri Court of Appeals,
Western District.

March 24, 1998.

Jeffrey S. Bay, Van Osdol, Magruder, Erickson, Redmond, Kansas City, for appellant.

Lorie N. Savin, Kansas City, for respondent.

Jill M. Katz, Stinson, Mag & Fizzell, Kansas City, Guardian ad Litem.

Before HOWARD, P.J., and
BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Antonio Williams (Husband) appeals from the trial court's order dissolving his marriage to Sherry Williams (Wife). Husband raises three points of error on appeal. First, he contends that the trial court erred by finding that the parties' residence was marital property because Husband's premarital and separate assets were used to provide the down payment and pay off the mortgage on this property. As his second point, Husband claims that even if the trial court correctly classified the home as marital property, the trial court erred in awarding it to Wife because this resulted in an inequitable distribution of the marital property since the home constituted approximately 90% of the marital assets. Finally, Husband contends that the trial court erred by denying him visitation rights with the parties' minor children because there was no evidence that Husband ever abused these children.

The judgment of the trial court is affirmed.

### Factual and Procedural Background

In the light most favorable to the trial court's judgment, the facts are that Husband and Wife were married on April 22, 1988. The parties lived together in Kansas City, Missouri. Wife had two children from a previous marriage: Terry Anthony and Brandy Anthony, both of whom lived with the parties. Two children were born to Husband and Wife prior to their marriage: Maurice A. Williams, born June 16, 1983, and Martinus D. Williams, born September 19, 1986. During the marriage, Husband rehabilitated homes for a living. Since a car accident in December 1988, Husband has been disabled and has received SSI benefits. Although Wife worked full-time during the first years of the marriage, during the latter part of the marriage she worked sporadically or on a part-time basis.

During the parties' marriage, Husband and Wife resided in a home located at 10829 Fremont in Kansas City, Missouri. Both Husband and Wife valued the Fremont residence at $67,000. When the parties acquired the house in 1988, they used the proceeds from the sale of Husband's car and the sale of Wife's jewelry in order to make the down payment. The Fremont residence was titled in both parties' names. Husband and Wife paid off a small portion of the mortgage on the house through Wife's earnings. However, the bulk of the mortgage was satisfied with the proceeds from the sale of a rehabilitated house.

The parties separated on February 1, 1994. On January 4, 1995, Husband filed his Petition for Dissolution of Marriage in the Circuit Court of Jackson County. In his petition, Husband requested joint legal custody of the two children and a fair and equitable distribution of the marital property. Wife admitted in her answer that the marriage was irretrievably broken and filed a Cross–Petition for Dissolution of Marriage. In her cross-petition, Wife also requested the trial court to equitably divide the marital property. In addition, Wife requested the trial court to grant her sole custody of the parties' children and deny Husband visitation rights with the parties' children.

At the hearing on the matter, Husband and Wife both presented evidence. Wife testified that Husband physically abused her on numerous occasions, causing her to leave the home several times. There was also evidence that Husband punched Wife's son, Terry Anthony, in the face for tracking mud in the house. The blows broke Terry Anthony's jaw and it had to be wired shut for six weeks. As a result, Husband was charged with and pleaded guilty to assault in the first degree. As a condition of the probation ensuing from his guilty plea, Husband was prohibited from seeing Wife, his own two children and Wife's two children during the four-year term of probation.

After taking the matter under advisement, the trial court entered an order dissolving the parties' marriage. In its order, the trial court determined that the Fremont residence was marital property and awarded it in its entirety to Wife. The court also set off each party's separate property to its owner and assigned certain debts to each party. In addition, the trial court awarded each party an automobile and one bank account and

divided furniture, appliances and miscellaneous household items between the parties. Because of Husband's abusive behavior, the court determined that it could not fashion a visitation plan which would guarantee the safety of the children and Wife. Therefore, the trial court awarded Wife full custody of Maurice and Martinus and denied Husband any "visitation or contact with the minor children until further order of the Court." Finally, the trial court held that since Husband was unable to contribute to the children's support, he owed no child support to Wife. Husband filed a timely appeal in this court.

## Standard of Review

On appeal, this court affirms the trial court's decree of dissolution if it is "supported by substantial evidence, is not against the weight of the evidence, and neither erroneously declares nor applies the law." *Stratman v. Stratman*, 948 S.W.2d 230, 233 (Mo. App.1997) (quoting *Hutcherson v. Hutcherson*, 909 S.W.2d 403, 404 (Mo.App.1995)). This court accepts the evidence and inferences therefrom most favorable to the trial court's decree and disregards all contrary evidence. *Stratman*, 948 S.W.2d at 233. The trial court has substantial discretion in dividing marital property and this court will not interfere unless the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Id.*

## Points on Appeal

### Point I—Classification of Fremont Residence as Marital Property

■ As his first point on appeal, Husband contends that the trial court erred in classifying the Fremont residence as marital property. Husband premises his argument on the "source of funds" rule. Husband argues that because the funds used to provide the down payment and pay off the mortgage on the Fremont residence were his separate property, the trial court should have awarded him the real estate based on the source of funds rule. Husband asserts that the $10,000 down payment as well as "all but a very few monthly mortgage payments" came from his separate property, so he was entitled to have

that property designated as his separate property and awarded to him.

■ Under the source of funds rule, whether property is marital or separate depends on the source of the funds that financed the purchase of the property. *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 825 (Mo. banc 1984). Property is considered to be acquired as it is paid for, so proportionate shares in the value of an asset should be designated marital or separate according to the source of the payments made to acquire the asset. *Id. Hoffmann* did not, however, abolish our courts' theory of transmutation which allows a spouse to transmute a piece of separate property to marital property by express or implied agreement. *Woolridge v. Woolridge*, 915 S.W.2d 372, 376 (Mo.App. 1996); *Stephens v. Stephens*, 842 S.W.2d 909, 913 (Mo.App.1992). There is no conflict between the source of funds rule and transmutation; they are merely relevant in different factual situations. *Woolridge*, 915 S.W.2d at 376. A spouse transmutes separate property into marital property by titling it in both parties' names. *Id.*

Here, the title to the Fremont residence was placed in both Husband's and Wife's names at the time of the property's purchase. Despite Husband's claim that he paid the entire down payment from his separate funds, there was evidence that the money for the down payment came not only from the sale of Husband's car, which was his separate property, but also from the sale of some of Wife's jewelry, which was her separate property. Under the source of funds rule, since each spouse contributed nonmarital property, each spouse would be "entitled to an interest in the property in the ratio of the [spouse's] nonmarital investment to the total nonmarital and marital investment in the property." *Brooks v. Brooks*, 911 S.W.2d 631, 633 (Mo. App.1995).

■ However, the fact that the deed to the property was jointly titled obviates the need for this court to undergo the analysis under the source of funds rule with regard to the down payment. When a spouse pays for a purchase with separate property, but causes the property to be titled as tenants by

the entirety, there is a presumption that a gift was intended to the other spouse. *Tracy v. Tracy,* 791 S.W.2d 924, 926 (Mo.App.1990). Because the Fremont residence was titled in the joint names of Husband and Wife, there is the presumption that Husband and Wife were making gifts to each other of the separate funds used for the down payment. *Id.* In order to rebut this presumption, Husband must introduce clear and convincing evidence that he did not intend a gift to Wife of the portion of the down payment paid with his separate funds. *Id.* Therefore, this court must determine whether Husband met his burden. *Id.*

In his brief before this court, Husband fails to address the fact that the property is jointly titled and, consequently, neglects to direct our attention to clear and convincing evidence that the joint titling of the property does not demonstrate his intent that the down payment on the Fremont residence become marital property. The only evidence in the record concerning Husband's intent with respect to the Fremont property is his testimony that he "wanted to save the house for the kids." Husband's testimony that he wanted the Fremont property to be used for the children, a marital purpose, actually bodes in favor of classifying his contribution to the purchase of the property as marital in nature. *See Stephens,* 842 S.W.2d at 914. Although evidence of Husband's "acts and conduct with reference to the property subsequent to the time of the acquisition of title is admissible" in showing Husband's intent, *Tracy,* 791 S.W.2d at 927, no such evidence was introduced in this case. Therefore, this court holds that there is no clear and convincing evidence to rebut the presumption that each spouse's contribution to the down payment on the Fremont residence became marital property by virtue of the property's joint titling.

Husband makes the additional claim that a large proportion of the value of the Fremont property should be designated as his separate property because he paid off the majority of the mortgage on the property with his separate funds from the sale of a house he bought prior to his marriage to Wife. Husband's argument is without merit because

the evidence, in the light most favorable to the trial court's judgment, contradicts Husband's position. Wife testified that the parties obtained the money to pay off the mortgage on the Fremont residence by selling a house at 72nd and Wabash. She testified that the house sold was originally purchased from HUD after she and Husband were married, that Husband made substantial improvements to the house during the marriage and then sold it. Obviously, the trial court resolved the testimonial conflict between Husband and Wife in favor of Wife. This court defers to the trial court's resolution of conflicts in the evidence. *Hutcherson,* 909 S.W.2d at 404. In light of Wife's testimony that the rehabilitated house at 72nd and Wabash was acquired during the marriage, the mortgage on the Fremont residence was satisfied through proceeds from the sale of marital property.

■ Husband makes the argument that under § 452.330.4, "any possible commingling of [Husband's] separate and non-marital property with marital property and into the Fremont property does not transmute [Husband's] non-marital property into marital property." Section 452.330.4 provides that "[p]roperty which would otherwise be non-marital property shall not become marital property solely because it may have become commingled with marital property." Husband's reliance on this statute is misplaced. There was no commingling when the mortgage payments were made because the payments were made with marital funds, i.e., the proceeds of the sale of the rehabilitated house. The trial court did not err in classifying the entirety of the Fremont residence as marital property. Point I is denied.

**Point II—Division of Marital Property**

■ As his second point on appeal, Husband alleges that, assuming the Fremont home was marital property, the trial court erred by awarding it in its entirety to Wife because this resulted in an inequitable distribution of the marital property. Husband contends that the residence constitutes approximately 90% of the marital property. Therefore, he argues, the trial court violated

§ 452.330 by inequitably dividing the marital property.

▪▪▪▪ In a proceeding for division of property, the trial court is required to make an equitable division of the parties' marital property after considering all relevant factors. Section 452.330.1; *Hernandez v. Hernandez,* 872 S.W.2d 161, 166 (Mo.App.1994). Under § 452.330, the division of marital property is within the discretion of the trial court. *In re Marriage of Betz,* 880 S.W.2d 618, 619–21 (Mo.App.1994). This court will reverse the property division only if it amounts to an abuse of discretion by favoring one party unduly. *In re Marriage of Stuart,* 805 S.W.2d 309, 312 (Mo.App.1991). This court presumes that the trial court's division of the marital property is correct. *Tate v. Tate,* 920 S.W.2d 98, 103 (Mo.App.1996). On appeal, the party challenging the division has the burden of overcoming this presumption. *Id.* "Describing the award in terms of a percentage of marital assets is not meaningful unless considered together with the nature and extent of the property to be divided." *Vehlewald v. Vehlewald,* 853 S.W.2d 944, 949 (Mo.App.1993).

▪▪▪▪ This court also notes that the trial court is not required to divide marital property equally between the parties. *Carter v. Carter,* 940 S.W.2d 12, 16 (Mo.App. 1997). The division must only be fair and equitable and take into account the statutory factors of § 452.330.1. *Id; In re Marriage of Jennings,* 910 S.W.2d 760, 765 (Mo.App. 1995). The provisions of the statute in effect at the time are as follows:

1. In a proceeding for dissolution of the marriage . . ., the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

   (1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reason-

able periods to the spouse having custody of any children;

   (2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

   (3) The value of the nonmarital property set apart to each spouse;

   (4) The conduct of the parties during the marriage; and

   (5) Custodial arrangements for minor children.

Section 452.330.1. "Disparity in the value of marital property awarded each spouse is appropriate if the relevant factors, statutory or otherwise, justify an unequal division." *Betz,* 880 S.W.2d at 623. It is not a per se abuse of discretion for the trial court to award one spouse a disproportionate percentage of the marital property. *Id.*

The trial court awarded Wife: (1) the Fremont real property, valued at $67,000; (2) a bank account at First National Bank, valued at $90; (3) a 1994 Mazda Protege, value unknown; and (4) a variety of furniture and appliances, valued at $4350. The trial court awarded Husband: (1) a personal injury claim of unascertainable value; (2) a burglary claim, valued at approximately $8,000; (3) a 1990 Cadillac, value unknown; (4) a bank account at Boatmen's First National Bank, valued at $100; and (5) a variety of furniture, appliances and miscellaneous items, valued at $6,550. Thus, Wife received approximately 83% of the marital property, while Husband received 17%.[1]

Here, Husband's only complaint is that the trial court erred in awarding the Fremont residence to Wife because this resulted in an inequitable distribution of the marital property since the real property is the bulk of the parties' marital property. However, in one-sided distribution cases, the family home is commonly the largest part of a modest marital estate. *Scott v. Scott,* 645 S.W.2d 193, 195 (Mo.App.1982). Clearly, the family home is the largest part of the Williams' marital estate. Therefore, it is not surprising that

---

1. Although there is insufficient evidence in the record to value the two vehicles in determining the proportionate share of property received by

Husband and Wife, Husband does not raise this issue on appeal. Therefore, we do not address it.

Wife received a significantly larger proportion of the marital estate because she was awarded the Fremont residence. Similar property divisions have been approved in the past. *Id. See also Zlatic v. Zlatic,* 910 S.W.2d 818, 820 (Mo.App.1995); *Stamme v. Stamme,* 589 S.W.2d 50, 54 (Mo.App.1979). Here, Husband's conclusory assertion that the trial court violated § 452.330.1 by awarding Wife a disproportionate part of the marital property is without merit.

Furthermore, under § 452.330.1(1), the trial court should take into account the desirability of awarding the family home to an unemployed wife who has custody of the minor children. *Vehlewald,* 853 S.W.2d at 949. "The award of the home to the custodial parent simply reflects an appropriate reluctance to uproot the custodial parent and child by requiring its sale." *Id. See also Scott,* 645 S.W.2d at 195. In this case, Wife, who is unemployed, was awarded primary custody of the parties' minor children. Therefore, the trial court's award of the marital home to her is wholly consistent with the concerns expressed by the legislature in § 452.330.1(1) and reflects an appropriate regard for the stability and well-being of the children. *Vehlewald,* 853 S.W.2d at 949.

In light of these facts, Husband failed to rebut the presumption that the trial court correctly awarded Wife the Fremont residence. Husband's mere reliance on the fact that the percentage of property awarded to Wife is considerably more than that awarded to him is insufficient to rebut the presumption of correctness. *Id.* When considered along with the nature and extent of the divided property, the trial court did not abuse its discretion in its division of the marital assets. Point II is denied.

### Point III—Denial of Visitation Rights

■ As his third point on appeal, Husband contends that the trial court erred by failing to award him visitation with the parties' minor children, Maurice and Martinus, because there was no evidence that Husband ever abused these two children. Absent this evidence, Husband argues, there was no reasonable basis for the trial court to deny him visitation rights with his children. Husband

also contends that because two years of his probation period had already expired, the trial court erred by not limiting the restriction on his visitation rights to the remainder of the probationary term.

■ On appeal from the trial court's order regarding visitation rights, this court " 'gives deference to the trial court's assessment of what serves the best interests of the child and that judgment should be reversed only if it lacks substantial evidence to support it, it is against the weight of the evidence or erroneously declares or applies the law....' " *Warren v. Warren,* 909 S.W.2d 752, 755 (Mo.App.1995) (quoting *Shoemaker v. Shoemaker,* 812 S.W.2d 250, 253 (Mo.App. 1991)).

■ Contrary to Husband's assertions, § 452.400.1 does not require proof that the non-custodial parent physically abused the children of the marriage in order to deny or restrict that parent's visitation privileges. Section 452.400.1 merely indicates that if the trial court denies the non-custodial parent visitation privileges, it must find that visitation "would endanger the child's physical health or impair his emotional development." Furthermore, § 452.400.1 provides that, "[i]n determining the granting of visitation rights, the court shall consider evidence of domestic violence." Finally, this portion of the statute directs the court to "consider the parent's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault on other persons and shall grant visitation in a manner that best protects the child...." Thus, § 452.400.1 does not limit the trial court to consideration of physical abuse of the children of the marriage in determining visitation rights.

Here, the trial court found that "[d]ue to [Husband's] physical violence toward [Wife] and the children, it is not possible for the Court to fashion a visitation plan for the children and [Husband] which would guarantee safety for the children and [Wife]." The trial court had before it significant evidence of Husband's acts of physical abuse and domestic violence. Wife testified that Husband physically abused her throughout their marriage. Wife was granted a full order of

protection against Husband in 1994 as a result of this abuse. There was also evidence that Wife had to leave the home on numerous occasions during the marriage to take refuge in a battered women's shelter. In addition, Husband pleaded guilty to assaulting Terry Anthony. Husband punched his step-son in the mouth, breaking his jaw because he did not wipe the mud off his shoes before entering the house. This evidence certainly constitutes sufficient evidence of physical abuse and domestic violence for the trial court to deny Husband visitation privileges.

Husband also contends that the trial court erred by not limiting the denial of visitation rights to the remainder of his probationary period. This claim is also without merit. In its order regarding visitation of the children, the trial court denied Husband "visitation or contact with the minor children until further order of the Court." It would have been error for the court to enter an order automatically lifting the restriction on Father's visitation rights when his term of probation expired without reevaluating the parties' situation at that time. *J.L.S. v. D.K.S.*, 943 S.W.2d 766, 773 (Mo.App.1997). Point III is denied.

The judgment of the trial court is affirmed.

All concur.