In re the MARRIAGE OF Carol Lynn DAVIS and Randy Joseph Davis,

Carol Lynn Davis, Petitioner–Appellant,

v.

Randy Joseph Davis, Respondent–Respondent.

No. SD 31557.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 28, 2012.

Susan S. Jensen, Springfield, MO, for Appellant.

John E. Price, Springfield, MO, for Respondent.

DON E. BURRELL, J.

Carol Lynn Davis ("Wife") appeals the division of marital property portion of the judgment that dissolved her marriage to Randy Joseph Davis ("Husband"). The dispute primarily involves a home that was originally owned by Wife's mother. Wife's mother "gifted" the home by special warranty deed to Wife after the parties were married. Eleven days later, Wife executed a quit-claim deed that added Husband as an owner.

In two points relied on, Wife contends the trial court erred in declaring the home to be marital property and then ordering an "equalization payment from Wife to Husband" equal to one-half of its value because: 1) Wife contributed the home to the marriage and the law regarding transmuted property does not require an equal division of such property; 2) the parties' children resided primarily with Wife in the home; and 3) "Husband committed marital misconduct." Because Wife has failed to prove reversible error, we affirm.

### Applicable Principles of Review

A trial court's division of marital property is presumed correct. *Reynolds v. Reynolds,* 109 S.W.3d 258, 273 (Mo.App. W.D.2003). We must uphold the division "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). A mistaken application of the law does not warrant a reversal "unless the trial court error materially affected the merits of the action." *Montgomery v. Montgomery,* 18 S.W.3d 121, 125 (Mo.App. S.D.2000). In the context of a property division, such a mistake materially affects the merits if it renders the overall division of marital property inequitable. *Jinks v. Jinks,* 120 S.W.3d 301, 306 (Mo.App. W.D.2003) (no reversal for erroneous classification of property required when decree was still "fair").

The trial court is "vested with considerable discretion in dividing marital property[,]" *Workman v. Workman*, 293 S.W.3d 89, 95 (Mo.App. E.D.2009), and we will find that it has abused its discretion "only if the 'ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Reynolds*, 109 S.W.3d at 271 (quoting *Wright v. Wright*, 1 S.W.3d 52, 57 (Mo.App. W.D. 1999)). In reaching our decision, we defer all witness credibility determinations to the trial court, which may accept or reject "all, part or none of the testimony" it hears. *Lehmann v. Lehmann*, 750 S.W.2d 724, 725 (Mo.App. E.D.1988). "When no express finding of fact is made on an issue, we consider the issue to have been resolved in accordance with the result." *In re Marriage of Holden*, 81 S.W.3d 217, 226–27 (Mo.App. S.D.2002).

Our following summary of the evidence, and the reasonable inferences to be drawn from it, is presented in the light most favorable to the judgment and disregards all contrary evidence. *Holtgrewe v. Holtgrewe*, 231 S.W.3d 233, 235 (Mo.App. E.D. 2007).

### Facts and Procedural Background

The parties married in February 1996. Two children were born of the marriage. In June 2000, the family moved into a home owned by Wife's mother. The parties did not pay anything to live in the home. The home consisted of a house plus two vacant lots on either side. In October 2004, Wife's mother "gifted" ownership of the home to Wife by a special warranty deed. Eleven days later, Wife executed a quit-claim deed that added Husband as an owner of the home with Wife.

Over time, the parties improved the home by installing a fence, building a con-crete pad for a dog kennel, replacing kitchen countertops, tiling bathroom floors, replacing bathroom fixtures, adding three ceiling fans, repairing soffits, installing guttering, and adding a storage building with electrical service. The parties agreed that the improvements were "marital" and that they were paid for out of their "joint funds[.]"

In July 2006, Husband suffered a stroke that affected the frontal lobe of his brain. In 2008, he suffered a grand mal seizure. The parties separated in April 2009. Husband is considered disabled as a result of his brain injuries. He is unable to work, and he receives disability benefit payments of "[e]ighteen hundred and some dollars" per month. A benefit of $489 per month, per child, is paid to Wife on account of Husband's disability.

At the time of trial, Husband was paying $300 per month in rent (which included his utilities) to reside in a duplex located behind his parents' home. During most of the marriage, Wife did not work outside the home, but in March 2007 she "went back to work." At the time of trial, Wife was earning an annual salary of $38,000 working in sales and as an event coordinator.

As to the home's value, Wife testified that appraisals conducted on a couple of different occasions had produced values of $224,000 and $190,000. Wife used the $190,000 figure on her Exhibit 1 property exhibit, but she testified orally that she believed the home had fallen in value to $160,000 by the date of trial. Husband testified that the current value of the home was approximately $225,000, and he used that value on his Exhibit Q property exhibit. The trial court found the home to be worth $190,000.

Wife had credit card debt totaling $59,685.79. Husband owed $50,038.26 in

credit card debt. No debt was owed on the home.

The trial court entered its judgment dissolving the marriage on December 29, 2010. The judgment designated Wife as the payee for the children's monthly benefit based on Husband's disability, and it ordered no additional child support. Wife, who would be entitled to claim the children as dependents on her tax returns, was ordered to provide health insurance for the children. The judgment ordered the parties to split other expenses for the children.

Non-marital property having an approximate value of $10,435 was set aside to Wife, and non-marital property having an approximate value of $7,100 was set aside to Husband.

In addressing the division of the home, the judgment stated, "[t]he issue before the [trial court] is whether by adding Husband's name on the real estate he is entitled to a 50–50 division of said asset where limited improvements were made." The judgment later stated,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the [trial court] that when seeking an equitable distribution this [c]ourt may grant one or the other of the parties a greater share of the marital estate if it so deems proper. In this instance, the [trial court] finds that the parties lived in the residence located at [address omitted], Lamar, Missouri from approximately 2000 to the date of their separation in 2009 due to the generosity of [Wife's] mother and at no cost. [Wife's] mother placed the real estate in the name of [Wife] in October 2004. [Wife] testified that in November 2004 [Husband's] name was added as a property owner by quit claim deed.

[The trial court] finds that based on case law on transmutation, and the evidence before the [trial court], the real estate located at [address omitted], Lamar, Missouri is the [sic] marital property. The [trial court] further finds after opinion evidence and dated appraisal evidence before the [trial] court that the property is to be valued at $190,000.

The judgment awarded the home to Wife and ordered her to either pay Husband $95,000 by June 30, 2011, or make payments of $500 per month—plus interest at the annual rate of 9%—to Husband commencing in July 2011. Alternatively, the judgment allowed Wife to sell the home "before June 30, 2011 at any price agreed to by [Wife] and [Husband]" and "[o]ne-half of the net proceeds" could be paid "to fully satisfy the property equalization owed to [Husband] whether or not it is less or more than $95,000." The trial court valued the total marital property awarded to Wife at $203,592. It awarded Husband $21,208 in marital property, not counting the equalization payment from Wife. This appeal followed the trial court's denial of Wife's "motion to amend the judgment or for new trial[.]" For ease of analysis, we address Wife's points in reverse order.

## Analysis

### Point II—Overall Division Not an Abuse of Discretion

■ Wife's second point contends the "overall division of property is not supported by substantial evidence" because the equalization payment "fails to result in a just division after considering that the value of the marital home was contributed by Wife, the children spend the majority of their time in Wife's custody in the marital home, and Husband committed marital

misconduct."[1]  We disagree.

The judgment awarded approximately 48% of the total assets to Wife and 52% to Husband.  After accounting for the debt assigned to each party, Wife received approximately 42% of the net assets and Husband received 58%.

■ In dividing marital property, the trial court is directed to consider:

1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage;  and

(5) Custodial arrangements for minor children.

Section 452.330.1.[2]  "These factors are not exclusive, and no formula exists for determining the weight to be given to the factors in dividing the marital property." *Jinks*, 120 S.W.3d at 307.  "An appellate court will only reverse the trial court's division of property if the division is so unduly weighted in favor of one party as to constitute an abuse of discretion."  *Id.* at 305.

■ Wife acknowledges that the trial court can give each statutory factor the weight it deems appropriate, provided that it does not consider one factor to the exclusion of everything else.  See *Reynolds*, 109 S.W.3d at 273.  And she agrees that a just division—not necessarily an equal division—is the required outcome.  See *Myers v. Myers*, 47 S.W.3d 403, 407 (Mo.App. S.D.2001).  She also fails to cite any authority declaring a roughly 60–40 split in net marital property as inequitable *per se.*

Wife cites *Keller v. Keller*, 18 S.W.3d 589, 600 (Mo.App. W.D.2000), in support of her argument that the trial court should have considered Wife's contribution of the home "to the marriage when it divided all the marital property, even though Wife converted it to marital property."  In *Keller*, the Western District reasoned that while the "source of funds" rule should not be "invoked in the division of marital property," there was nothing wrong in the trial court "tracing the source of the funds used to acquire" the property because spousal contribution is one of the statutory factors to consider in dividing marital property and such a practice would not contradict the intent of the statute.  *Id.* Here, the trial court indicated that it did consider

---

1.  Wife's petition requested a "fair and equitable" division of the marital property and debts.  It did not allege that a disproportionate division would be appropriate based on Husband's marital misconduct, and that term does not appear in the transcript.  Even if Wife had alleged and proved such misconduct, it would not have entitled her to receive a larger share of the marital property unless she also proved that the misconduct actually subjected her to a greater financial burden. *Ballard v. Ballard*, 77 S.W.3d 112, 117–18 (Mo.App. W.D.2002).  Wife does not make such an allegation, let alone direct us to the

evidence that would support it.  In the argument portion of her brief, Wife also asserts that "[t]he division of property appears more inequitable when the debts are considered" and challenges the trial court's characterization of Husband's post-separation debt as marital.  Issues raised only in the argument portion of the brief are not preserved for review. *In re Marriage of Fritz*, 243 S.W.3d 484, 488 (Mo.App. E.D.2007).

2.  All statutory references are to RSMo 2000.

the history of the asset in finding that the home became an asset of the marriage "due to the generosity of [Wife's] mother and at no cost."

Wife cites *Williams v. Williams*, 965 S.W.2d 451, 456 (Mo.App. W.D.1998), as illustrating the award of "a greater division of the marital property" where the "family home makes up the bulk of the marital assets[.]" But, as *Williams* points out, the transmutation of property by titling it in the names of both spouses creates "a presumption that a gift was intended to the other spouse." *Id.* at 454–55. Wife does not explain why her acquisition of the home by gift should be weighted more heavily than Husband's acquisition by the same means. The trial court was not obligated to believe Wife's testimony that she added Husband's name on the property in response to his insistence that his improvements be "protected" and "to just make peace." *See id.* at 455 and *Lehmann*, 750 S.W.2d at 725 (trial court may believe some, all, or none of a witness' testimony). As a result, the trial court did not err if it implicitly found that Wife's quit-claim transfer was a gift to Husband.

Wife also relies on three other cases where the reviewing court found no abuse of discretion in awarding one spouse a greater share of the marital estate when that spouse had contributed more assets to it. In *Myers*, 47 S.W.3d at 406–08, the court found no abuse of discretion in awarding the husband 88% of marital assets when he contributed "considerably more assets" to the marital estate than the wife and had retired from a career that spanned twenty-three years before the marriage and only three years after. In *Robertson v. Robertson*, 3 S.W.3d 383 (Mo. App. S.D.1999), we found no abuse of discretion in awarding the couple's residence to the wife when the evidence supported a finding that her non-marital assets were

used to purchase the property and the "husband made no significant contribution." *Id.* at 385.

Finally, in *Betz*, 880 S.W.2d at 621–23, we found no abuse of discretion in awarding the wife approximately 35% of the marital property in addition to maintenance when most of the marital assets resulted from the husband's earnings, stating that reasonable persons could disagree over the division of property in that case. These cases (and many more like them) do not support Wife's claim that the trial court committed reversible error by failing to award her the majority of the marital property; they simply illustrate the application of our required standard of review in action—that the trial court's division will be affirmed if it was supported by substantial evidence and does not shock the judicial conscience. *Myers*, 47 S.W.3d at 408; *Robertson*, 3 S.W.3d at 385; *Betz*, 880 S.W.2d at 623.

Wife is correct that *Williams* also favorably discussed awarding the family home to the parent with whom the children would mostly reside. 965 S.W.2d at 456. But *Williams* did not hold that such a parent must receive the family home without cost. It merely reasoned that "[t]he award of the home to the custodial parent simply reflects an appropriate reluctance to uproot the custodial parent and child by requiring its sale." *Id.* at 457 (quoting *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 949 (Mo.App. E.D.1993)). Here, the judgment awarded the parties joint legal and physical custody of the children and designated the home it awarded to Wife as the children's residence for mailing and educational purposes. And while it permitted Wife the option of selling the home, it did not require her to do so.

Substantial evidence supported a finding that the parties' primary marital asset came to each of them as a gift. Husband

is disabled, and Wife is gainfully employed. Under these circumstances, the trial court's decision to award Husband a slightly higher percentage of the net marital property was not "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *See Wright,* 1 S.W.3d at 57; *Betz,* 880 S.W.2d at 623. Point II is denied.

### Point I—No Prejudice Shown From Claimed Error of Law

Wife's first point claims the trial court erroneously declared the law when it stated that the home, as transmuted property, "must be divided equally between the parties[.]" As a result, Wife claims the trial court failed to divide the marital property in accordance with the requirements of section 452.330, "and, in so doing, the division of property is inequitably in Husband's favor." Wife claims that "[a] thorough reading of the trial court's judgment makes it apparent that the trial court, upon determining that the [home] was marital,[3] believed it had to divide the value of that particular asset equally between Husband and Wife. This was error."

If the trial court did commit the legal error asserted by Wife, a question we do not need to reach,[4] such an error would require reversal only if Wife then proved that the error was material—that it made the overall property division inequitable. *See Montgomery,* 18 S.W.3d at 125, and *Jinks,* 120 S.W.3d at 306. As noted in our

analysis of Point II, no such prejudice appears.

Point I is also denied, and the judgment of the trial court is affirmed.

JEFFREY W. BATES, J. and DANIEL E. SCOTT, P.J., concur.

---

3. Wife does not dispute that the home was "transmuted to marital property[.]"

4. While the judgment does raise the *question* of whether Husband is entitled to a 50–50 division of the home, and the ordered equalization payment is equal to one-half of the trial court's valuation of the home, the judgment does not expressly *state* that such a division is legally required. And we are not inclined to draw the inference suggested by Wife when

the judgment later states the correct standard: "that when seeking an *equitable distribution* this [c]ourt may grant one or the other of the parties a greater share of the marital estate if it so deems proper." (Emphasis added.) We presume that the trial court knew and followed the law unless its judgment clearly indicates otherwise. *Panettiere v. Panettiere,* 945 S.W.2d 533, 540 (Mo.App. W.D.1997).